**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CLAUDIA REZEK<br><br>Plaintiff,<br><br>v.<br><br>U.S. BANK NATIONAL ASSOCIATION, AND DOES 1-10<br><br>Defendants. | Case No.:  3:20-CV-00578 W (BLM)<br><br>**ORDER DENYING MOTION TO STRIKE PORTIONS OF PLAINTIFF'S FIRST AMENDED COMPLAINT [DOC. 8]** |

Pending before the Court is Defendant U.S. Bank National Association's motion to strike portions of Plaintiff Claudia Rezek's First Amended Complaint ("FAC"). [Doc. 8.] Plaintiff opposes. [Doc. 10.] The Court decides the matters on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons that follow, the Court **DENIES** the motion. [Doc. 8.] Defendant's Request for Judicial Notice is **GRANTED**. [Doc. 8-1.]

Defendant's original Motions to Dismiss [Doc. 3] and to Strike Portions of the Complaint [Doc. 4] are **DENIED AS MOOT** following the FAC's filing.

1

# I. BACKGROUND

## A. Factual Background

Plaintiff's FAC asserts various causes of action relating to her April 2018 resignation from employment with Defendant. (*FAC* [Doc. 7].) Plaintiff contends her supervisor, Christine Snowden-Kigin, and Defendant constructively terminated her by taking adverse employment actions against her relating to her medical disabilities. (*Id.* at ¶ 22.)

In 2016, Plaintiff began working for Defendant as a Corporate Payment Systems Relationship Manager under Snowden-Kigin and Sarah Fortune, Snowden-Kigin's direct manager. (*FAC* [Doc. 7] ¶ 8, 11.) From June 22, 2017, to August 17, 2017, Plaintiff's health care provider placed her on medical leave for several medical disabilities and conditions including, but not limited to, chronic migraines. (*Id.* at ¶ 9.) During her medical leave, Plaintiff alleges Snowden-Kigin communicated with Plaintiff about her work weekly, took away two of Plaintiff's biggest accounts, reduced Plaintiff's bonus to about 30% of the full amount, and refused to give Plaintiff a merit-based salary increase based on Plaintiff's performance metrics. (*Id.*) Upon her return to work, Plaintiff's neurologist placed her on work restrictions, which included "flying no more than once per month." (*Id.* at ¶ 11.) Plaintiff alleges she submitted a Work Status Report that informed Snowden-Kigin, Fortune, and Julie Meeks—a human resources representative—of this restriction. (*Id.*)

Plaintiff alleges that Defendant continued to retaliate and discriminate against her because of her medical condition, disability, and prior medical leave. (*FAC* [Doc. 7] ¶ 10.) During an August 2017 coaching session, Snowden-Kigin allegedly placed Plaintiff on a sixty-day performance improvement plan that required Plaintiff to travel weekly. (*Id.* at ¶ 13.) Additionally, during a November 2017 coaching session, Snowden-Kigin allegedly informed Plaintiff that her medical travel restriction was affecting her job performance, even though the restriction was instituted only two weeks prior, and had not yet caused any schedule changes to Plaintiff's client meetings. (*Id.*) During this same

session, Fortune allegedly informed Plaintiff that if the restriction became permanent, then Defendant may move Plaintiff to a position without a travel requirement. (*Id.*) Plaintiff alleges that in a December 2017 write-up for unsatisfactory performance, Snowden-Kigin claimed Defendant received a customer complaint on July 23, 2017 that Plaintiff was unresponsive. (*Id.* at ¶ 14.) However, Plaintiff could not have been responsive to this client at that time because she was on medical leave. (*Id.*)

In December 2017, Plaintiff lodged a formal HR complaint, requesting an investigation of Snowden-Kigin and termination of the harassment, retaliation, and failure to accommodate she had been facing. (*FAC* [Doc. 7] ¶ 18.) Plaintiff learned through verbal communications with Defendant that an investigation was undertaken. (*Id.*) However, Defendant failed to provide Plaintiff with any written resolution to her request for investigation and action. (*Id.*) Defendant's only response was communicated verbally: "Both you and Ms. Snowden Kigin are strong women, you need to figure out how to work together." (*Id.*)

Plaintiff alleged Snowden-Kigin's mistreatment against Plaintiff that began in 2017 and continued through to her constructive termination included, but was not limited to, the following:

   a. Refusing to give Plaintiff a "discretionary" bonus despite her achieving 98% of her overall performance metrics;
   b. Giving her a poor review and placing her on a performance improvement plan despite her positive performance aligning with her over 10 years of exemplar service;
   c. Assigning her tasks including, but not limited to, weekly reports, weekly contacts, and weekly meetings (with agendas prepared beforehand and summaries afterward), which were not previously part of her job responsibilities;
   d. Pestering Plaintiff about when her restrictions would be released, during every weekly meeting, and despite Plaintiff repeatedly telling Ms. Snowden-Kigin she would inform her as soon as Plaintiff knew;
   e. Punishing Plaintiff for not travelling as much as Ms. Snowden-Kigin wanted by placing Plaintiff on a performance improvement plan;

      f.  Blocking Plaintiff from transferring to a more accommodating position with Defendant; and
      g.  Regularly condescending Plaintiff.

(*FAC* [Doc. 7] ¶ 16.)

Plaintiff argues she had "no choice but to resign" from her employment with Defendant in April 2018 because she could no longer tolerate the adverse employment actions. (*FAC* [Doc. 7] ¶ 22.)

### B.    Procedural History

On February 26, 2019, Plaintiff filed a discrimination complaint with the Department of Fair Employment & Housing ("DFEH") alleging multiple violations of the Fair Employment and Housing Act ("FEHA"), California Government Code section 12940 *et. seq.*, including retaliation, discrimination, hostile work environment based on disability, and failure to engage in the interactive process. (*Cabrera Decl.* [Doc. 8-2] Ex. 1.) The discrimination complaint further alleged retaliation in violation of the FEHA's family leave provision, the California Family Rights Act ("CFRA"), California Government Code section 12945.2, and the Family Medical Leave Act ("FMLA"), Title 29 United States Code section 2601 *et seq.*, failure to prevent discrimination, harassment, and retaliation, and wrongful constructive termination in violation of public policy. (*Id.*) On February 26, 2019, Plaintiff received a notice of case closure and right to sue from the DFEH. (*Id.*)

On February 20, 2020, Plaintiff filed suit in California Superior Court against Defendant asserting causes of action for: (1) retaliation in violation of FEHA; (2) discrimination in violation of FEHA; (3) hostile work environment harassment based on disability in violation of FEHA; (4) failure to engage in the interactive process in violation of FEHA; (5) failure to accommodate in violation of FEHA; (6) retaliation in violation of CRFA and FMLA rights; (7) failure to prevent discrimination, harassment, and retaliation; and (8) wrongful constructive termination in violation of public policy. (*Notice of Removal* [Doc. 1-4] Ex. A.)

1  On March 26, 2020, Defendant removed the case to this Court.  (*Notice of Removal* [Doc. 1].)

On April 2, 2020, Defendant filed a Motion to Dismiss and Motion to Strike Portions of the Complaint.  (*Mot. Dismiss* [Doc. 3]; *Mot. Strike* [Doc. 4].)

On April 21, 2020, Plaintiff filed a First Amended Complaint as a matter of course, asserting the same causes of action as the Original Complaint.[1]  (*FAC* [Doc. 7].)

On May 5, 2020, Defendant filed a new Motion to Strike addressing the FAC. (*Mot. Strike* [Doc. 8].)

## II.  LEGAL STANDARD

Rule 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ."  Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010) (quotation omitted).  Motions to strike are generally disfavored and are "usually . . . denied unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties."  See Travelers Cas. & Sur. Co. of Am. v. Dunmore, 2010 WL 5200940, at *3 (E.D. Cal. 2010).

Redundant matter is the needless repetition of assertions.  See Travelers, 2010 WL 5200940, at *3.  "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being plead."  Whittlestone, 618 F.3d at 974 (quotation omitted).  "Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question."  Id. (quotation omitted).  "Scandalous

---

[1] Plaintiff amended the original complaint, particularly the section titled "FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION," to add more detail to instances of retaliation and discrimination.

matters are allegations 'that unnecessarily reflect . . . on the moral character of an individual or state . . . anything in repulsive language that detracts from the dignity of the court' . . . and 'include . . . allegations that cast a cruelly derogatory light on a party or other person.'" Consumer Solutions REO, LLC v. Hillery, 658 F. Supp. 2d 1002, 1020 (N.D. Cal. 2009) (quoting Cobell v. Norton, 224 F.R.D. 1, 5 (D.D.C. 2004), In re 2TheMart.com Secs. Litig., 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000), respectively).

The court may not strike from the pleadings any disputed and substantial factual or legal issue. See Whittlestone, 618 F.3d at 973–74 (9th Cir. 2010). Any doubt about whether the matter under attack raises a factual or legal issue should be resolved in favor of the non-moving party. See id. at 975 n.2.

## III. DISCUSSION

Defendant moves to strike the following portions of Plaintiff's FAC as being time-barred and thus immaterial to Plaintiff's claims for relief:

- "During the leave, Ms. Snowden-Kigin communicated with Plaintiff about her work on a weekly basis, took two of Plaintiff's biggest accounts, reduced her bonus to about 30% of the full amount because of Plaintiff's medical leave, and refused to give Plaintiff a merit-based salary increase she earned based on her performance metrics." (*FAC* [Doc. 7] ¶ 9.)
- "Defendant continued to retaliate and discriminate against Plaintiff because of her medical condition and/or disability, or previous medical leave, upon her return to work in mid-August 2017." (*FAC* [Doc. 7] ¶ 10.)
- "After Plaintiff's return from medical leave and for the remainder of her employment with Defendant through the end of 2017 and the first few months of 2018, Ms. Snowden-Kigin intensified her retaliatory and discriminatory treatment of Plaintiff due to her medical conditions and/or disability." (*FAC* [Doc. 7] ¶ 12.)
- "In late August 2017, Ms. Snowden-Kigin had a coaching session with Plaintiff in which she placed plaintiff on a 60 day performance improvement plan requiring

plaintiff to travel and visit customers weekly. In another coaching session in November 2017, Ms. Snowden-Kigin informed Plaintiff that her medically required travel restriction was affecting her job performance, despite the fact that the restriction had only been put in place two weeks prior and had not yet caused any changes to be made in Plaintiff's client meetings. During this same coaching session, Ms. Fortune informed Plaintiff that if the restriction became permanent that Defendant may have to move Plaintiff to a job position that did not require travel." (*FAC* [Doc. 7] ¶ 13.)

- "In December 2017, Ms. Snowden-Kigin included in a write-up for allegedly unsatisfactory performance, that Defendant received a customer complaint on July 23, 2017 that Plaintiff was being unresponsive; Plaintiff was on medical leave and could not have been responsive to this client at the time, though." (*FAC* [Doc. 7] ¶ 14.)
- "This was a continuation of Ms. Snowden-Kigin's campaign of mistreatment against Plaintiff that began in 2017 and persisted through to her constructive discharge, including but not limited to, the following:
    a. Refusing to give Plaintiff an allegedly "discretionary" bonus despite her achieving 98% of her overall performance metrics;
    b. Giving her a poor review and placing her on a performance improvement plan despite her positive performance aligning with her over 10 years of exemplar service;
    c. Assigning her tasks including, but not limited to, weekly reports, weekly contacts, and weekly meetings (with agendas prepared beforehand and summaries afterward), which tasks were not previously part of her job responsibilities;
    d. Pestering Plaintiff about when her restrictions would be released, during every weekly meeting, and despite Plaintiff repeatedly telling Ms. Snowden she would inform Ms. Snowden as soon as she knew;
    e. Punishing Plaintiff for not travelling as much as she (Ms. Snowden-Kigin) wanted by placing Plaintiff on a performance improvement plan;
    f. blocking Plaintiff from transferring to a more accommodating position with Defendant; and
    g. Regularly condescending Plaintiff."

(*FAC* [Doc. 7] ¶ 16.)

- "In December of 2017, Plaintiff lodged a formal, written complaint with HR, requesting an investigation of Ms. Snowden-Kigin's actions and that the harassment, retaliation, and failure to accommodate she had been suffering at the hands of Ms. Snowden-Kigin be brought to an end.  Plaintiff learned through verbal communications from Defendant that an investigation was undertaken and that multiple employees had been interviewed. Defendant did not provide any written resolution to Plaintiff in response to her request for investigation and action; rather, Defendant's only response to Plaintiff's complaint was communicated verbally: paraphrasing, Defendant told Plaintiff, "Both you and Ms. Snowden-Kigin are strong women, you need to figure out how to work together." (*FAC* [Doc. 7] ¶ 18.)

Although Defendant acknowledges Plaintiff's 2017 medical leave is appropriately included in the FAC,  Defendant nevertheless argues the above allegations that occurred before February 26, 2018—one year before Plaintiff filed her DFEH charge—are time barred.  (*Mot. Strike* [Doc. 8] 3:15-18.)  (*Mot. Strike* [Doc. 8] 3:17-18.)  The Court respectfully disagrees.

When viewing the matter in the most beneficial light to Plaintiff, the portions of the FAC that Defendant has moved to strike appear to speak to the continuing course of discriminatory conduct that Plaintiff endured during her employment.  The continuing violation doctrine permits a plaintiff to "recover for unlawful acts occurring outside the limitations period if they continued into that period."  <u>Wassmann v. S. Orange Cty. Cmty. Coll. Dist.</u>, 24 Cal. App. 5th 825, 850 (2018) (citing <u>Jumaane v. City of L.A.</u>, 241 Cal. App. 4th 1390, 1402 (2015)).  Provisions of the FEHA, which include the CFRA, shall be "construed liberally." <u>Richards v. CH2M Hill, Inc.</u>, 26 Cal. 4th 798, 820 (2001).  This liberality "extends to interpretations of the [] statute of limitations," which should be interpreted "to promote the resolution of potentially meritorious claims on the merits." <u>Id.</u> (quoting <u>Romano v. Rockwell Internat. Inc.</u>, 14 Cal. 4th 479, 493–94 (1996)).

Whether the continuing violation doctrine applies raises a question of fact: "[a]t a jury trial, the facts are presented and the jury must decide whether there was a continuing course of unlawful conduct based on the law as stated in CACI No. 2508." Jumaane, 241 Cal. App. 4th at 1401. CACI No. 2508 provides that the continuing violation doctrine requires: (1) the defendant's actions inside and outside the limitations period be sufficiently "similar or related;" (2) "the conduct [be] reasonably frequent;" and (3) that "the conduct had not yet become permanent" outside the limitations period. 1 CACI 2508 (2020).

All Defendant's actions allegedly stem from Plaintiff's medical leave and appear to form one course of retaliatory conduct. See Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1056, 1058 (2005) (explaining that actions outside the limitations period are sufficiently related to those inside the period when such actions form a linked course of retaliatory or discriminatory conduct). As a direct result of Plaintiff's 2017 medical leave, Defendant allegedly removed two of Plaintiff's biggest accounts; reduced her bonus; refused to honor her salary increase; placed her on a performance plan she medically could not comply with; threatened to change her job position due to her medical restriction; assigned Plaintiff menial tasks not part of her responsibilities before medical leave; submitted an unfounded negative written evaluation about Plaintiff's performance during her medical leave; repeatedly inquired about when her medical restrictions would be lifted; generally intensified retaliatory and discriminatory treatment towards Plaintiff; and constructively terminated Plaintiff in April 2018. (*FAC* [Doc. 7].)

Further, the actions appear to be sufficiently frequent such that they demonstrate a systemic discriminatory practice. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 107 (2002) (explaining that conduct is "reasonably frequent" when it demonstrates a "systematic" discriminatory practice "that operated, in part, within the limitations period.") All the actions occurred within a relatively narrow time frame between June 2017 and April 2018 with at least some of the conduct occurring within the limitations period.

Finally, the actions are not alleged to have become permanent outside the limitations period.  See Richards, 26 Cal. 4th at 823 (explaining that "permanence" in this context should be properly understood to mean "that an employer's statements and actions made clear to a reasonable employee that any further efforts at informal conciliation to obtain reasonable accommodation or end harassment would be futile").  Plaintiff's reasonable attempts at reconciliation remained ongoing until she was constructively terminated.

Thus, the portions of Plaintiff's FAC that Defendant has moved to strike appear to fall within the purview of the continuing violation doctrine and present triable issues rather than "immaterial" or "impertinent" matter subject to a motion to strike.

## IV.   CONCLUSION & ORDER

Based on the foregoing, Defendant's motion to strike is **DENIED**.  [Doc. 8.]

Dated:  September 3, 2020

_____
Hon. Thomas J. Whelan
United States District Judge